Good morning, thank you. We have two issues to discuss this morning, claim construction and judicial estoppel, both of which involve de novo review, and I will go directly to claim construction. We take the position that the trial court made a mistake with claim construction and came up with an overly narrow definition of the phrase closely spaced, saying that indeed they were so close together that you couldn't, they were grouped to start with, and within the group they were so close together that you couldn't put another LED between them. All counsel seem to be it really finds no support in the prosecution history. How much space is closely spaced? Well, if it seems to derive from the event where that was put in the claim, that was put in the claim to distinguish it from the Schmidt patent, and the Schmidt patent is interesting from the little spotlights, and the writer of the Schmidt specification says, I do not want this to emulate fluorescent tube-like lighting. He disparaged fluorescent tube-like lighting. He said it was broad and flat and it didn't give my jewelry the sparkle and effect, so I want three spaced apart lights that are going to bring out the sparkle and brilliance of this jewelry. Now, that patent happens to be full of dimensions from which I concluded that those lights are six inches apart, and indeed they are about six inches from the targets that are to be illuminated. So if we accept that, so you've said Schmidt is widely spaced, so if we say six inches is closely spaced. How do we get down to closely spaced? I think that is the ultimate question. The best testimony on this came from our expert, Mr. Roberts, Dr. Roberts, and he said, look, this is the whole idea here is to come up with a device which can be a replacement for a fluorescent tube light. Now, in order to do that, it's got to work. So it has to produce, let's start with how lumens do we need to replace a fluorescent tube light? If this light leaves you in the dark, it isn't a replacement for a fluorescent tube. It isn't worth anything. It'll never sell. It's not a commercial device. So we've got to start with how many lumens do we need? Now that translates into how many LEDs do you need? And if you've got 48 inches to put them in, how are they going to Because if they're higher powered, now, we do know from the Schmidt argument, and there is a disclaimer there. Sounds pretty indefinite. It's indefinite in terms of a metric, but it's not indefinite in terms of end result, and that's why we came up with the definition that we did. So it's purely functional, your definition, but you concede that it is indefinite in terms of an actual metric, right? It is indefinite in terms of an actual metric, but if we must apply a metric to it, it's certainly less than six inches. It's probably, I think a key here is how the examiner interpreted that. He cited and applied two pieces of prior art that had spacing between the lights that were about an inch to inch and a half. So he thought that was closely spaced. So I still, I'm looking for an answer. If you say if we must apply a metric, let's assume we must apply a metric, what's the metric? It's probably going to be in the couple of inch range, maximum. Okay, so that's your definition of a claim construction that is probably in the several inch range. You don't think that's indefinite? I think it is intentionally indefinite in terms of metrics because you've got to start with lumens and go to space. Well, that's a problem for you, isn't it? Yes. Isn't that a problem for you? I mean, whether it's intentionally indefinite or not, you've got to, we've got to construe the claim in a way that gives the public notice as to what's infringed, what's excluded and what's not excluded. Well, and perhaps more importantly, to provide a basis for a jury instruction. And I think that a jury could be adequately instructed to say, look, this spacing in combination with the fact that there's a lens over this thing, has a certain amount of light scattering effect, is such that the LEDs no longer function as little spotlights or individual point sources. Mr. Young, it troubles me a bit that to distinguish the prior art, you used a metric. You quickly went to six inches apart, gave us a specific, measurement, and now to define the invention, you're abandoning the very metric you used to distinguish yourself. Isn't that a bit of a problem for you? Well, it is in this argument, only because I'm going back and forth between what I see and what the attorney who prosecuted the application said to the examiner. If we're looking at this from the standpoint of a prosecution disclaimer, then we have to look at her language. You're looking at this from the standpoint of a person of skill in the art reading the patent. Now, they're reading that patent. What in that tells them what closely spaced means? Dr. Roberts said what... No, no, no. What in the patent tells them what closely spaced means? You have to have a spacing that accommodates enough LEDs to make this thing function as an acceptable... Where is that in the patent? The patent is full of references to a replacement for... You should be pointing me to those, shouldn't you? Yes. You should be saying column X, column Y. It's in column one. It's right off the bat in the introduction of what the invention is. Okay. We do have figures two and three that are showing us LEDs practically touching each other along the full length of this fluorescent tube replacement. Right. Yes, correct. And that's what the judge ended up doing with the defendant's encouragement. He went right to the drawings and said, well, I'm just going to go by the drawing. It looks to me like they're grouped. And within the groups, it looks like they're too close the fact that there's plenty of room on the circuit board for more LEDs. So what's that got to do with anything? This business of too close to put another one in between was just fabricated out of thin air. Well, his threshold determination was that there's no ordinary meaning. And so in my read, he was just grasping at straws, and he was looking for anything in the specification that could give him some meaning. I agree. That was in an effort to try to avoid indefiniteness, wasn't it? In other words, in the absence of pointing those drawings, isn't it clear to you that the district court clearly would have said this patent, this claim is indefinite? He did make the comment that his claim construction was intended to preserve validity. Now, I think we can all question whether that's the right approach to claim construction, but he did mention the fact that, nevertheless, he ended up drawing claims to exactly what was shown in the drawing without any adequate basis in the prosecution history. There never was a disclaimer that should lead us in that direction. Can I just ask, if we were to disagree with you and to conclude that the patent is indefinite, is it within our authority to do that here on appeal, or would the case have to go back to the district court? It would have to go back. That issue is not on appeal. That was the first point I made in my reply brief. The claim construction is a question of law. We're here to construe the claim. Yes. So, if we find it indefinite, we can't come up with any construction. That's clearly within our authority to construe the claim. Yes, it is. So, if we say we can't construe the claim, the claim is insolubly ambiguous, what is there left for the district court to do in light of that? Well, I think the district court can look at the evidence on how a person of ordinary skill in the art is going to construe that claim. Have we already been there and done that? I mean, he's already done that, right? I don't think he did. I think he ignored Dr. Roberts' testimony, more or less said that he did, and yet he was the only person of ordinary skill in the art to provide any guidance to the court. Before you run out of time, if I can just ask you one question here about the second issue, the Estoppel holding. Yes. It strikes me that you have a good argument that Estoppel doesn't apply here because he didn't prevail on anything, but on the other hand, if I look at the scheduling order and what you said in response to the scheduling order in describing what was infringement, you seem to describe this as 36 separate LEDs. You didn't describe the theory that you're now articulating, and so why shouldn't your failure to articulate that theory in response to the scheduling order bar you now? Well, I don't think claim construction should be wrapped around infringement contentions. I think it's the other way around. I don't understand what you're saying. The And in setting them forth, you described it as 36 LEDs. Absolutely correct, and I was wrong when I did that, and I maintain it was a mutual mistake. Did you ever move to correct the scheduling response to the scheduling order? I never got a chance. The motion for summary judgment came hot on the heels of the order construing the claims. That was my very first opportunity to revise my proof, admissible proof, that indeed what apparently we all thought were individual LEDs were composites of six LEDs. Do you have any doubt that the district court, if we were to set aside the estoppel holding, would hold that you were barred by the scheduling order? I don't see how we could order come to that conclusion because after, I think it's conventional after a claim construction finding to take another look at the infringement contentions to see if they need to be adjusted. That's typical, and that certainly is what's needed in this case. If he found you barred because of things you said in your briefing, why wouldn't he find you barred because of something you said in the response to the scheduling order? Well, I think the comment that was made in the Lorillard case about judicial estoppel is really material here. I don't think you're answering my question. If he found that there was judicial estoppel here, isn't it perfectly plain that he would have, if we set that aside, that he would find that the scheduling order was a bar? If he's going to hold me to my original erroneous claim construction, then he may use that as a basis for doing it, but I think it would be improper to do so because it stands in the way of the truth-getting function. This business of these LEDs actually being six LEDs is not a theory. It's a physical fact, and the purpose of trial, if I get to a trial, is to get at the truth, and that happens to be the truth. It's ironic that a claim construction... Is there anything in the record to establish that you were precluded from finding that truth in a timely manner? You may note that I called it to the judge's attention in the oral argument at the Markman hearing. I said, oh, by the way, judge, we have discovered that what we thought were individual LEDs are actually composites of six LEDs. I gave him every chance, and nobody contradicted me, I gave him every chance in the world to take that into account, and he came up... This is the irony of the case. He came up with a claim construction that is a perfect fit to the accused device for the trial. I'm standing here telling you that a claim construction that benefits me in my infringement case is erroneous, so I can live with being stuck with that claim construction if you reverse the judicial estoppel because now infringement is a slam dunk, and he held that that's what validates the patent on top of it, so I'm sitting pretty if you affirm the claim construction but reverse judicial estoppel. It almost sounds like the judge is saying, doggone it, I came up with a claim construction that meant you were supposed to lose, Mr. Young, and now you're telling me you win on this. Well, I can't let you do that. Well, that's not the right approach to lawsuits for patent infringement. That's wrong from the get-go. If you have anything more, I'd be glad to answer. Thank you, Mr. Young. Thank you. We consumed all your time. Let's give Mr. Folley an extra five minutes, and then we'll restore Mr. Young's rebuttal time. Thank you. A little extra time if you need to use it, Mr. Folley. Thank you, Your Honor. May it please the court, my name is Brad Folley. I represent LED Dynamics. I'd like to go back to square one. The district court's just wrong on judicial estoppel, right? Under the Supreme Court authority, you have to prevail on something. They didn't prevail on the claim construction. They lost on the claim construction. How could there be judicial estoppel? I think judicial estoppels are weakest argument. Yeah, it's wrong, right? I won't concede that. I think there are good grounds to say that the district court did rely on their definition of LED. How did they prevail? What did they prevail on? They prevailed on, well, they didn't prevail on anything substantive. Well, then how can there be judicial estoppel? Well, as I said, I think that's our weakest argument, and I think that focusing on that really misses the point of this entire exercise, and I think. Are you going to lose if we go back on the district court's claim construction? There are six LEDs closely spaced in those groups. The definition of what an LED is, I believe, is not an issue of fact, but rather an issue of claim construction, and as Your Honor pointed out, the district court. We're going to change the LED definition? Well, what they've proffered, what the other side has proffered is that an LED is really comprised of these six little chips, and we haven't had any argument. We haven't had any expert testimony about what those little dyes are and whether they constitute an LED, so I think if we went back to the district court for a trial, we would have a claim construction on what is an LED in the we would argue that the district court properly administered its own docket and its case management order and precluded. Well, why didn't the district court err on the claim construction too? I think the district court did err on the claim construction in this sense, that our primary the claim closely spaced. Well, closely spaced wasn't in the patent when we started. We all know that. That's right. So, we can read the patent specification. We can, and it is replete with references to conventional fluorescent light, tube sockets, light arrays, conventional lighting. Don't you have enough there for one of skill in the art to figure out how close I have to these to get conventional fluorescent lighting? No. That can't be. I think I could do it. I'll set them up there and give me 10 minutes. I'll try them one inch apart and then a half inch apart and then three inches apart, and eventually I'll say, you know, that's about that's conventional lighting. I'll take that one, and I'm not even an expert. I bet an expert could do it in the first time, couldn't they? If the patent had a written description. Well, it does. It's got a written description, and it tells you over and over and over again you are to get conventional fluorescent lighting with conventional fluorescent lighting fixtures and a conventional fluorescent lighting result. That isn't hard to figure out. It doesn't say that with all due respect. I've read it. I've got about six places underlined in two pages, and I could go on. Do you want me to read some of these? He should have done that. It talks about... He didn't figure that out. I'm sorry to interrupt. Well, no, go ahead. It talks about being able to physically replace in a... As such, the present invention can be mounted in a conventional fluorescent lighting tube socket. Yes. That's 227, 28, 29. I agree with that, but that doesn't mean that the light that would be emanated from that socket would necessarily be the invention that they claimed. And the best example of that is the Schmitt patent. You're replacing a conventional fluorescent light tube and getting the same result. This isn't rocket science. It doesn't. But it's a pretty cool idea. You save money because you're using LEDs if you space them right, and you can figure that out, can't you? No, because in the patent application, there is no written description for the term closely spaced. There's no written description. Of course, it was amended in. We know that. But we can't rely on an amendment to a patent. The examiner didn't have any trouble figuring it out. He knew exactly what it was. But the inventor has to possess the invention when they write the patent application. It can't fill in a missing written descriptive matter. Obviously, he didn't fill anything in. He's just getting conventional lighting. We needed to get pictures with closely spaced, don't you? So that you can figure out. If that's what closely spaced means. Once again, because there is no description of any spacing of LEDs anywhere in the patent application, there is no, let alone spacing related to illumination. But that's irrelevant. This comes later in order to help people understand. And these people are not you and me. They're people of skill in the art. And this isn't hard to understand even for you and I, is it? You're kind of manufacturing an argument, which I understand you have to do. And so you find some terms and say, well, that isn't defined. You're telling me LED isn't defined, which is about as hard to understand as your current argument. But under section 112, paragraph one, the inventor must be in possession of and describe the invention in the application. That is absent from this patent. It does talk about a physical replacement. It must be in possession and describe it well enough for a person of skill in the art to understand. Who is of skill in the art here? The only person who was of skill in the art that what he said was that you could have an LED replacement tube with two LEDs spaced 48 inches apart and still be closely spaced. If that replacement light would replicate the light from a fluorescent tube in whatever particular application you wanted. That is incredible testimony and goes far beyond what this patent covers. What was said during the prosecution when the Schmidt reference was cited against this and the closely spaced language was added? What did the applicant say? What the applicant wanted to do was... No, I don't want your recollection. I want you to quote me what was said. I don't know that I could quote it, but it's in the appendix, isn't it? It is. I'm sure it's in the appendix. I think what the applicant was saying was that... No, no. Get the appendix and tell me what he said. It said that... Where are you reading from? Just the blue brief? Appendix 296. Appendix 296, okay. What does he say? It says, Schmidt does not teach or suggest a plurality of closely spaced LEDs extending between the opposite ends of the bulb portion, which is shown by example in applicants figures one and two. A critical feature of Schmidt is the existence of spaced apart light sources as exhibited by the presence of this element in each claim of the patent. The specification explains that adequate separation assures maximum reflective angles with respect to the object being displayed. For example, figure two illustrates three spaced apart lamps mounted in spaced apart sockets. So in distinguishing Schmidt, there was a specific reference to figures one and two. Yes. My point is that through prosecution history and through limiting the claim to include the term closely spaced, one cannot provide the initial written description that was required in the application as filed. And there's nothing in the application that... I would have thought you would be arguing that in the prosecution history there's a reference to figures one and two and that that suggests that that's what the applicant meant by closely spaced. If we have to come up with a claim construction, then I think that figures one, two, and three are the only thing that provide any basis for any spatial relationship. Of course, we understand we never limit ourselves to the preferred embodiment. So we would also understand that one of skill in the to reach the same result, right? No doubt. Then you're right at the claim construction difference that we're dealing with. They can modify it. They could be spaced apart. Depending upon relative to the power of the LEDs, we understand they might be spaced apart a half an inch. They might be spaced apart a quarter of an inch. They might be spaced apart an inch. But they'd be closely spaced. It'd have to be much less than Schmidt, but it would have to replicate the results of a conventional fluorescent light, right? I don't think so. Why not? Because there's nothing in the patent that has filed... We've just gone through both the patent which is replete with conventional fluorescent lighting and that's what you're replacing. We've gone through the figures one and two. We've gone through the prosecution history and then we understand, as you just admitted, that one of skill in the art can modify that to reach the same results. There's nothing indefinite here and it's pretty clear that you've got some troubles, both with the claim construction and clearly with the estoppel. It's clearly an indefinite definition for closely spaced. What is indefinite? What's indefinite is the term closely spaced, first of all, has no hard and fixed metric meaning. It's a subjective... You don't need a hard and fast metric meaning. You need something understood by one of skill in the art in order to enable it. We've just gone through how you can do that three or four different ways. You can do exactly what's shown in the preferred embodiment, then you can modify it a little bit if you have larger or smaller LEDs, and I'm not an expert. What is the light that's being replaced? If it's a replacement... Conventional fluorescent lighting tube. That phrase is in here at least a dozen times. In what application? In an application for a large room, over a desk, in a refrigerator, in a... Now you've got precisely the reason that you can't put a inch metric on it, right? Because it always appears in different applications. If it was a fluorescent light in this room, you would replicate the fluorescent light in this room. If it's a smaller room, you'll have a different fluorescent lighting and you'll have a slightly different setting, won't you? This is just like the ortho chair case where the invention was putting a wheelchair into the front seat of a car, and every car has a different size front seat. So we said you couldn't have a metric for the size of that chair, but one of skill in the art would know how to modify it to fit an Oldsmobile as opposed to a Toyota. And one of skill in the art... And this is easier technology than that by far. One of skill in the art is going to know how to get a fluorescent light in this room as opposed to my closet. In orthokinetics though, the inventor describes specifically how a person of ordinary skill in the art would be able to determine whether the chair could fit in the back of the vehicle, provided specific places for measurement and dimensions. So it taught people to be able to decide whether or not... I find this case far easier than orthokinetics. If you don't find section 112 paragraph 1 invalidity for lack of written description to support, I think that the other problem... Would you advise us to rewrite the claim construction when we send it back? No. I would... What we're asking the court to do is invalidate the patent either under paragraph 1 section 112. Well, invalidity is not before us, is it? Yes, it is, your honor. The other side has made a one-half page argument that we somehow waived our right to claim invalidity. What we gave up was our affirmative claim, counterclaim of invalidity. We did not give up our affirmative defense of invalidity. But we've got infringement here. You're asking us to... That's all we have before us is a question of infringement. That would clearly enlarge the judgment. Don't you need a cross appeal or something to allow us to do that? No, because as you said earlier today, what's in front of this court is claim construction. In order to do claim construction, you've got to determine whether or not the claim is capable of being construed. And for the arguments or the reasons that we've given, we don't believe that this claim of closely spaced is capable of construction, much less have written description support in the application. Well, at most, that leads you to say there's no infringement because the claim is incapable of being construed, not that we would say that the patent is invalid, right? You could say that the claims that include the term closely spaced are invalid for lack of written description support or indefiniteness. Well, not without a cross appeal. We said that specifically in typewriting. The issue on the cross appeal, we won on summary judgment, obviously, but we did preserve the argument about indefiniteness. Yeah, but you're asking for a broader judgment. Indefiniteness is a broader judgment than non-infringement. I think what we're asking for is that there are one of two grounds that the court can affirm summary judgment. One, it can find that the patents are valid either for indefiniteness or lack of written description support, or third, the court can affirm the district court's judgment on summary judgment. And for those reasons, we ask that this court affirm the summary judgment ruling below on any of those three grounds. Thank you, Mr. Fawley. Young, you have five minutes. I'll take about 30 seconds, Your Honor. Mr. Young, before you get to your 30 seconds, in distinguishing Schmitt, there was a reference to closely spaced as shown in figures one and two. Now, it may be that figures one and two being embodiments of a patent don't limit the claims, but why, when you distinguish Schmitt and make reference to figures one and two as exemplars of closely spaced, why isn't it appropriate for the district court, based on the prosecution history, to look to figures one and two to figure out what closely spaced means? That's a good question. The first question I had is whether she was talking about figures one and two of Schmitt or figures one and two of the patent, and I think her statement is ambiguous on that score, but assuming it was the latter, that does make figures one and two an example of what would be certainly considered closely spaced, but it isn't necessarily a limiting example. It depends upon what room you were in or what space you were lighting and how far away you were lighting it and how strong the LEDs are and a few things that one of skill and the art can quickly adjust, but they have to adjust them, right? Exactly, exactly, and another statement that was made in the prosecution history that's found on page 28 of the blue brief was made by the attorney, Ms. Knight, who was prosecuting the application when she distinguished what was claimed from the TSUI device, which was a rope light with she said, in contrast, the closely spaced light-emitting diodes as described by the applicants are mounted in space based upon a viewing range of the LEDs to provide a uniform light emitted along the length of the tube such that it is a suitable replacement for a fluorescent lighting fixture. Very helpful language, and your honor. Column three, you talk about adjusting or maintaining the power as well, so they know they're going to be adjusting and controlling things, right? Sure, and the fact that this is a replacement for a conventional fluorescent tube is right in the preamble of claim three. Thank you very much. Mr. Young, the next case is Meneghassi versus the